# Mahlon B. Lloyd

## *v.*

## John Karnes.

1. EXECUTION — *redemption of real property.* M., the assignee of a second mortgage, had also assigned to him the decree rendered in the foreclosure suit upon the first mortgage, and afterward, at the sale under such decree, purchased the premises and assigned his certificate of purchase, and also quitclaimed the premises to K., who failed to redeem them in the manner pointed out by statute, and also to record these instruments; and subsequently L., a judgment creditor of the mortgagor, had execution levied upon the premises, and at the same time redeemed from the sale under the first mortgage and recorded his certificate of redemption, and at the sale under the execution became the purchaser, and received the sheriff's deed therefor: *Held,* that the redemption by L. vested in him the legal title, which constituted a bar against any proceedings by K. to foreclose the second mortgage.

2. FORMER DECISION. The case of *McLagan* v. *Brown,* 11 Ill. 523, not in conflict with this decision.

3. EXECUTION — *redemption by a judgment creditor.* The equity of redemption not having been conveyed by the mortgagor, L. was entitled to redeem the premises as against K., who was the mere assignee of the certificate of purchase.

4. SAME — *the assignment of the certificate of purchase did not effect a redemption.* The mere assignment of the certificate of purchase to K. did not effect a redemption of the premises, and, having failed to redeem in the manner pointed out by statute, he cannot now, as assignee of the second mortgagee, set up superior rights as against L., who redeemed as a judgment creditor of the mortgagor.

5. FORMER DECISION. The case of *Flacks* v. *Kelly,* 30 Ill. 472, discussed and approved.

6. SAME — *redemption complete.* The redemption by L. having been made under the statute, was complete, he having redeemed from the sale

under the senior mortgage. The fact that such sale did not satisfy the mortgage debt was no fault of his, and he could not be required to redeem from such unsatisfied balance.

7. FORMER DECISION. The case of *Bradley* v. *Snyder*, 14 Ill. 263, has no application to this case.

8. M., under whom K. claims interest in the premises, having been made a party to the proceedings to foreclose the first mortgage, K. is bound by the action had therein.

9. NOTICE — *of unrecorded deed.* L. was not affected with notice of the deed of M. to K., it never having been recorded.

10. CHANCERY — *laches.* A party cannot claim the aid or benefit of a court of equity, who has been guilty of *laches* in protecting his rights.

11. EVIDENCE — *allegations and proofs must correspond.* A complainant must recover, if at all, on the case made by his bill; he cannot allege one case in his bill, and make proof of a different one. His allegations and proofs must correspond.

12. SAME — *redemption — proof of — what is not.* The unrecorded assignment of the certificate of purchase from M. to K. was inadmissible in evidence, to show a redemption of the premises by K.

13. SAME — *certificate of purchase no proof of redemption.* A certificate of purchase is no evidence of a redemption. It is simply authority to demand a deed, if the property be not redeemed.

14. SAME — *what is competent proof of redemption.* Competent evidence of a redemption, is an instrument in writing, under the hand and seal of the officer receiving the redemption money, and must be recorded the same as other instruments affecting the title to real estate.

15. The deed of M. to K. conveyed nothing more than the interest he held as mortgagee, and assignee of a mortgagee, and affected no equity of redemption of the mortgagor, or of any judgment creditor.

16. The possession of the premises by K. was simply notice of his title to the extent of a mortgagee and assignee of the certificate of purchase. It was not notice of any greater rights or equities.

17. CHANCERY — *foreclosure — will put in possession — when.* In this suit by K. to foreclose the second mortgage, L. having set up in his cross-bill possession of the premises by the mortgagee, and prayed that such possession might be surrendered to him as the owner of the fee; and the proof showing that L.'s title is paramount to K.'s and unaffected by any equities on his part, L. should be put into possession of the premises without forcing him to an action of ejectment.

APPEAL from the Circuit Court of Henry county; the Hon. IRA O. WILKINSON, Judge, presiding.

The facts are fully stated in the opinion.

Messrs. HINMAN & PAGE, for the appellant.

Messrs. SHAW & CRAWFORD, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, exhibited in the Circuit Court of Henry county, by John Karnes against Mahlon B. Lloyd, Thomas F. Davenport and wife, and Sherman B. Smith, to foreclose a mortgage executed by Davenport and wife to Francis Karnes, dated September 26, 1857, to secure three promissory notes, of even date with the mortgage, for $2,000 each, and payable on the 1st day of October, 1859, 1860 and 1861, respectively, with interest at ten per cent. The mortgage was on three tracts of land, two of them in section 24, township 17, north range one, east of the fourth meridian, and the other in section 18, in township 17, north range two, east of the same meridian.

Smith was defaulted, and Lloyd and Davenport put in separate answers, and, on the hearing, a decree was rendered in favor of the complainant, to reverse which Lloyd has appealed to this court.

From the pleadings and proofs in the cause, the facts and points made on them appear to be these: On the 26th of September, 1867, the date of complainant's mortgage, Davenport mortgaged to Joshua Harper the premises in controversy, and another tract about which there is no dispute, to secure the sum of $3,650, with the understanding that this mortgage should have the preference. This mortgage, on the 9th of October, 1857, was assigned by a separate instrument of writing to Thomas Mellon of Pittsburgh, Penn., to secure to him the payment of two of the notes due, the one October 1, 1859, and the other October 1, 1860, which writing of assignment was filed for record October 21, 1857. In February, 1862, Harper filed his bill to foreclose his mortgage, claiming priority, and making Francis Karnes and Mellon parties, and at the March Term, 1862, of the Circuit Court, he obtained a

decree of foreclosure, and for payment to him by Davenport of $2,515, which decree in May following, Harper assigned to Mellon. In August, 1863, Mellon and wife and Francis Karnes executed a quitclaim deed to appellee for the premises, which deed was not recorded. On the 17th of September, 1863, the master in chancery sold the premises to Thomas Mellon, under the Harper decree for $1,950, and on the 23d of that month Mellon assigned the certificate of purchase to appellee. This was substantially the appellee's case.

Appellant showed two judgments in his favor against Davenport, rendered at the October Term, 1864, of the Henry Circuit Court, by confession, one for $4,264, and the other for $1,148, on which executions issued October 12th, and were levied the same day on the premises in controversy, appellant having redeemed them from the master's sale, by paying to the sheriff the sum of $2,148.50, being the amount with interest of Mellon's bid, for which the sheriff granted to appellant a certificate of redemption, dated October 12, 1864, and which was recorded in the proper office the same day. Thereupon the sheriff duly offered the premises for sale under these executions, and they were bid off by appellant for the sum of $5,000, and a sheriff's deed duly executed to him on the 20th of January, 1865. It was admitted at the hearing, that Mellon was the owner of the notes and mortgage sought to be foreclosed from October 9, 1857, to August 20, 1863.

It will be proper to state here, that depositions of Joseph A. Sawyer were read on behalf of appellee, going to show possession, by appellee, of the premises.

The important question raised on these facts is, did the redemption made by appellant, under his judgments, confer upon him rights superior to those of the holder of the mortgage now sought to be foreclosed?

The appellant insists that the court should have dismissed the bill at the hearing, for the reason that the proceeding in foreclosure of the first mortgage, and the redemption of the premises by appellant as a judgment creditor, and the sale to him under his execution, and taking the sheriff's deed, vested

5 — 45TH ILL.

in him the title to the premises, and constituted a bar to the action of appellee.

Appellee contends that appellant had no right to redeem without paying him the whole amount of the Harper mortgage, and the mortgage in suit, less payments made thereon, and rents and profits received by appellee. He insists, when the premises were bid off by Mellon at the master's sale, September 27, 1863, it devolved on the mortgagor, or his grantee, by deed or mortgage, to redeem within twelve months, or to do something equivalent in its effects to a redemption, and only on failure to do this judgment creditors would have a right to redeem. The case of *McLagan* v. *Brown*, 11 Ill. 523, is cited in support of this position.

The difference between that case and this is quite obvious. In that case the judgment debtor had sold his equity of redemption before Brown's judgment became a lien on the premises, but his vendees never redeemed, and the question was, could the last judgment creditors redeem from the first sale after the expiration of the twelve months within which the purchasers from the judgment debtor might have redeemed, and it was held they could, under the authority of the case of *Sweezy* v. *Chandler*, 11 Ill. 445. This was the point before the court, and what may have been said by way of illustration or argument is not to be confounded with the decision itself on the point made.

The equity of redemption not having been conveyed by Davenport, the mortgagor, what prevented him from redeeming the premises after the certificate of sale had been purchased by appellee of Mellon, if he applied to redeem within one year? Nothing could have prevented it; and, this being so, by what provision or principle of law is it, that a judgment creditor cannot redeem as against the assignee of the certificate of purchase? There can be none.

But the appellee contends, that, taking an assignment of this certificate of sale, he had in effect redeemed the land, and it was then subject to his mortgage, which could not be defeated by a judgment creditor.

He is the second mortgagee, and he purchased the elder certificate of purchase, and would have been entitled to a deed under the statute at the end of fifteen months if no judgment creditor redeemed, and would thus have cut off all subsequent incumbrances. This he had the unquestioned right to do; but, having failed to acquire title in that way, in consequence of the redemption by the appellant, a judgment creditor, he cannot now claim that he had merely redeemed as the mortgagee of Davenport, and in this way annulled the sale. To do this, appellee should have redeemed in the manner pointed out in the statute and recorded the certificate of redemption. In this way he could have protected his second mortgage, and on filing his bill in chancery could have obtained a decree subjecting the premises to sale for payment both of the amount advanced in redeeming from the elder lien, and for the amount due on his own mortgage. He would then have occupied the position of Flacks, in *Flacks* v. *Kelly et al.*, 30 Ill., cited and relied on by appellee.

Flacks held a junior mortgage, and took a decree of fore-closure subject to the lien of the elder mortgage. He bought the land under his decree, and within the year redeemed from the sale under the elder mortgage. Subsequently Chatten, a judgment creditor of the mortgagor, levied upon and sold the premises under an execution issued upon his judgment, and claimed the right to redeem from Flack's sale under the second mortgage by paying the amount of that sale; we held that Flacks, by redeeming from the sale under the first mortgage, had not extinguished that lien, but was subrogated to the rights of the first mortgagee, and that the judgment creditors must redeem from both mortgages.

Had appellee pursued this course, the record of his certificate of redemption, showing he had redeemed as mortgagee, would have been notice to all persons of the equitable rights thus acquired by him. Appellant's judgment would have been subject, in equity, to the sum paid for redemption, and to the amount of the second mortgage. If the assignee of a certificate of purchase can set it up as a redemption, which is attempted

here by appellee, judgment creditors would never feel safe in redeeming, and the object of the statute providing for redemption would be wholly defeated. It is claimed also, by the appellee, that the sale under the elder mortgage did not satisfy the mortgage, a balance remaining of about $600, and that appellant should have paid that balance before his redemption was complete, and cites *Bradley and wife* v. *Snyder et al.,* 14 Ill. 263, in support of the position. By reference to that case it will be perceived, that was a case where certain grantees of mortgaged premises had not been made parties to the bill of foreclosure, and filed their bill to redeem on paying the amount with interest, for which the premises were sold. The court in allowing the right to redeem, very pertinently inquired, upon what terms shall they be permitted to exercise it? As they had come into a court of equity, asking the equitable interference of that court, the court said they must do equity. That the application is not to redeem from the sale merely, but from the mortgage, and equity demanded they should pay, on redemption, the whole amount due by the mortgage.

This case is not the same case, or like it in any particular. Here the appellant asks no aid of a court of equity to redeem,— he but availed of a statutory right to redeem, and that statute did not require him to redeem from the mortgage, and from all liens, but from the sale, and only asks the court to protect that right. What says the statute? The judgment creditor shall sue out an execution on his judgment, and place it in the hands of the proper officer to execute, and the officer shall thereupon indorse on the execution a levy upon the lands or tenements which the judgment creditor wishes to redeem, and shall pay to the officer into whose hands he has placed his execution, the amount of money for which the premises were sold, with ten per cent per annum interest thereon, from the date of such sale, for the use of the purchaser thereof, etc., upon payment of which the officer shall file in the recorder's office of the county a certificate of the redemption thereof by the judgment creditor under his execution.

The appellant did all the law required him to do, and is not

driven to the necessity of asking equity, as he can safely rely on the law. Having complied with the law, it would be inequitable that he should now be affected by any lien subsequent to that under which he acquired his title. Appellee's lien is subsequent to the lien of the Harper mortgage, under which appellant derives his title, and if there be a balance remaining due of that mortgage, whose fault is it, and who should be affected by it? Not the appellant, because he has complied with the law. Mellon, at the time of the sale from which appellant redeemed, was the owner of both mortgages, and appellee, claiming under him, has had his day in court, by being parties through Mellon, to the bill filed by Harper, and they have had abundant opportunity to make the most out of the property, and if they omitted to do so, their *laches* should not prejudice appellant. If, as appellant's counsel urges, the property was worth more than Mellon's bid, he could have raised his bid to the full amount due by his decree; and if it had been of more value than the amount of the decree, he could have foreclosed his second mortgage, he owning both, and made the first decree a part of his case. By so doing, whoever redeemed from the sale, under the second mortgage, would have been required to pay the amount of the first decree, but Mellon preferred subjecting the land to sale under the first decree, and bid it in himself at a price below its value, and then assigned the certificate of purchase. We see no equity under these circumstances, in requiring appellant to make up this deficiency, and know of no law compelling him so to do.

In further answer to the claim set up by appellee, the appellant insists, as the bill filed by him was merely a bill to foreclose a mortgage, and in the usual form for such purpose, praying an account against the mortgagor, an order for its payment at a short day, and for a sale of the premises in case of default of payment, and for a bar of all equity if not redeemed according to law, it was irrelevant to the issues pending to prove title in complainant or any possession of the land, or that he held the premises under any such deed as he offered in evidence, or that he claimed any interest in the premises by virtue of any

such deed, there being no allegation of such facts in his bill. The doctrine has been long established in this. court that a party must make by his proofs the case he has made in his bill; he is not allowed to state one case in his bill and make out a different case by the proofs. *McKay* v. *Bassett*, 5 Gilm. 499; *White* v. *Morrison*, 11 Ill. 361; *Rowan* v. *Bowles*, 21 id. 17; *Chaffin* v. *Heirs of Kimball*, 23 id. 36; *Fish* v. *Cleland*, 33 id. 239; *Bush* v. *Connelly*, id. 448. And the rule is the same at law. *Moss* v. *Johnson*, 22 id. 633; *Sherman* v. *Blackman*, 24 id. 350; *Cast* v. *Roff*, 26 id. 452. The deed from Mellon and Francis Karnes to appellee was not recorded, and was therefore no notice to appellant, nor was the assignment of the certificate of purchase from Mellon to appellee recorded, and in the absence of proof that appellant had knowledge of it, should not have been admitted in evidence. The attempt to use this certificate as proof of a redemption of the premises by appellee from the sale under Harper's decree we have already said was not warranted; nor was it alleged in the bill that appellee had redeemed. A certificate of purchase is no evidence of a redemption. Competent evidence of redemption is an instrument in writing under the hand and seal of the officer receiving the redemption money, and it must be recorded in the recorder's office of the proper county, in the same manner as other writings affecting the title to real estate are filed and recorded. Scates' Comp. 609. Nothing less than this is evidence of a redemption of land. A certificate of purchase cannot perform that office, but is authority merely to demand a deed if the property be not redeemed. That is the sole object and purpose of a certificate of purchase. The assignment of it places the assignee in a situation to demand a deed if the premises are not redeemed, and if redeemed within the twelve months the certificate of purchase is dead to all intents and purposes, and can never be revived. All the interest, then, which appellee derived from the assignment of the certificate was the right to receive the redemption money. He cannot transmute such a certificate into a certificate of redemption and thus acquire other and different rights under it.

As to the title derived to appellee by the quitclaim deed from Mellon and Karnes to him, that conveyed nothing more than the interest they held as mortgagees and as assignees of a mortgagor, and affected no equity of redemption of the mortgagors or of any judgment creditors.

The claim set up by appellee that his title was strengthened by taking possession of the premises, as proved by Sawyer, and that possession operated as notice to appellant before he obtained title, is a claim not set up in the bill, and forms no part of the case as made by the bill, and consequently, was irrelevant. This was not an element in the case and can not avail appellee. He prayed only for a decree for the amount due him on the mortgage, and for a foreclosure. All else was foreign to his case.

It is further contended by appellant, that, as this cause was heard upon the original bill and answers of defendant's and appellant's cross-bill, in which he charged appellee with being in possession of the premises, and prayed that he might have a decree for the possession, and such possession being proved by the deposition of Sawyer, that the court should have passed upon this question. The record shows the case was submitted as well on the cross-bill as on the original bill and answers.

Although, as we have said, the fact of possession by appellee was not in his bill, and he, therefore, could not bring evidence of it, yet, we conceive it is entirely competent for the appellant to make use of that evidence to sustain his cross-bill. That testimony sustains the cross-bill, and establishes the fact that appellee was in possession of the premises, to the exclusion of appellant, who has the title.

As this court said in *Aldrich* v. *Sharp*, 3 Scam. 264, when a court of chancery obtains jurisdiction of the subject matter of a suit, it will retain it to the end that justice may be done between the parties; as, in case of foreclosure of a mortgage, the court in which the decree is rendered will put the purchaser in possession, instead of driving him to an action of ejectment.

We do not perceive why the same rule should not obtain

where a party succeeds on his cross-bill in a foreclosure case, in which bill he sets up possession by the mortgagee, and prays that the possession may be surrendered to him as the owner of the fee.

In this case, we think the appellant has conclusively shown he has the paramount title to these premises, unaffected by any presumed equities on the part of the appellee or other person, and it is but right a decree should pass requiring the surrender of the possession to him without the expense and delay of an ejectment. Appellee contends, that this possession by him, by his tenants, was notice to all persons of all his legal and equitable rights.

This possession was notice only of the title appellee had, which was that of mortgagee and assignee of the certificate of purchase — nothing more. It could not be notice, nor could appellant, or any one else, by inquiring, and by the most diligent investigation, come to the knowledge that a certificate of purchase could be changed by any legal alchemy into a certificate of redemption.

With these views, the decree must be reversed, in so far as it disregards the title of appellant, and that appellant, as against appellee, be put in possession of the premises as prayed in his cross-bill, and the bill of appellee be dismissed as to the appellant.

*Decree reversed.*